# UNITED STATES DISTRICT COURT

for the

District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
BLACK SAMSUNG DEVICE WITH IMEI 357532329036033, )
CURRENTLY IN THE CUSTODY OF THE FEDERAL )
BUREAU OF INVESTIGATION IN FARMINGTON, NEW )
MEXICO. )

Case No. **24MR-1338**

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A.

located in the _____ District of ___New Mexico___, there is now concealed *(identify the person or describe the property to be seized)*:

See attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. section 922(g) | Felon in possession of a firearm or ammunition |

The application is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Lorraine Hardy
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__telephonically sworn and electronically signed__ *(specify reliable electronic means)*.

Date: July 17, 2024

_____
*Judge's signature*

City and state: Albuquerque, New Mexico      Karen B. Molzen, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: BLACK SAMSUNG DEVICE WITH IMEI 357532329036033, CURRENTLY IN THE CUSTODY OF THE FEDERAL BUREAU OF INVESTIGATION IN FARMINGTON, NEW MEXICO. | Case No. _____ |

**AFFIDAVIT**

I, Lorraine Hardy, being duly sworn, depose and state as follows:

**INTRODUCTION**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic Device—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. This affidavit is being submitted for the limited purpose of securing a search warrant, so I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause for the requested warrant.

3. I am currently serving as an FBI Special Agent assigned to the FBI, Albuquerque Division, Farmington Resident Agency, where I primarily investigate crimes that occur in

1

Indian Country to include homicide, aggravated assault, child sexual assault, kidnapping and rape. I have been with the FBI for approximately five years. I received on the job training from other experienced agents, detectives, Indian Country criminal investigators, and tribal police officers. My investigative training and experience includes, but is not limited to, processing crime scenes, conducting surveillance, interviewing subjects and witnesses, writing affidavits for executing search warrants and arrest warrants, examining cellular telephones, managing confidential human sources and cooperating witnesses/defendants, serving subpoenas, collecting evidence and analyzing public records.

## JURISDICTION

4. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched is a black Samsung cellular telephone with IMEI number 357532329036033 (hereinafter "the Device"). The Device is currently located in evidence at the Federal Bureau of Investigation office in Farmington.

6. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## CRIMINAL HISTORY

7. Danny Herrera ("HERRERA") is a convicted felon. HERERRA pleaded guilty in the federal district of New Mexico, to possession of a firearm in furtherance of a drug trafficking crime in case number 1:12CR01397-001MV. On November 12, 2013, the Court sentenced HERRERA to 120 months of imprisonment. He was released from the Bureau of Prisons on October 28, 2020.

8. On May 21, 2024, HERRERA had an active arrest warrant issued by the United States Marshals for a federal probation violation (F511710951). The original charges were for possession of a firearm or destructive device by a felon. HERRERA also had an active felony warrant out of New Mexico District Court for failure to appear. Originating charges were for possession of a controlled substance (felony), possession of drug paraphernalia, and driving while license suspended (D-1116-CR-202300368).

## PROBABLE CAUSE

9. On May 21, 2024, Region II Task Force (RTTF) agents used a confidential informant (CI-1) to attempt a purchase of a firearm from HERRERA. CI-1 informed RTTF that HERRERA wanted to sell a shotgun that was kept at 36 Road 5217, Farmington, New Mexico. CI-1 has proven reliable through several successful controlled purchases, providing information for search warrants resulting in large narcotic seizures and providing RTTF agents with information regarding illicit drugs being sold within the San Juan County Jurisdiction. CI-1 knows HERRERA from previous interactions involving drug and firearm transactions.

10. CI-1 provided RTTF with a screenshot of their text conversation with HERRERA that occurred on May 21, 2024. A RTTF agent observed the text exchange between CI-1

3

and HERRERA. CI-1 told HERRERA that CI-1 sold the shotgun. CI-1 inquired if HERRERA had anything else for sale. HERRERA replied, "Yes, come over and bring the money. Please Hurry." HERRERA's cellular telephone number used in the text exchange was 505-534-1666 and was observed by RTTF agents as a contact in CI-1's cellular telephone.



Screen Shot of Text Messages

11. RTTF agents met CI-1 at a secure location to brief the planned operation to purchase the firearm. CI-1 told RTTF agents that HERRERA had recently moved to Durango, Colorado. CI-1 called HERRERA's phone number (505-534-1666) to discuss their plan to meet up. RTTF agents heard HERRERA's voice during the phone call and believed that voice to be the same as the voice heard while listening to HERRERA's jail calls.

4

12. On May 21, 2024, the Southwest Drug Task Force (SWDTF) out of Durango Colorado, received an assignment to locate, fugitive, HERRERA, who was known to be residing in Durango.

13. SWDTF utilized another CI (CI-2) to locate HERRERA. According to CI-2, HERRERA was living in room 515 at the Spanish Trails Inn in Durango, Colorado, with several other known drug dealers. CI-2 had been introduced to HERRERA and had been in recent contact.

14. On May 21, 2024, SWDTF officers and U.S. Marshals conducted surveillance of the area. They observed CI-2 and HERRERA travel in a white Audi to the Durango Mall. The Audi parked near the entrance of the mall and investigators observed HERRERA exit the rear passenger side of the vehicle. U.S. Marshals and SWDTF officers approached and apprehended HERRERA.

15. CI-2 provided law enforcement with a black Adidas backpack. CI-2 stated the backpack belonged to HERRERA and there was a firearm inside. CI-2 stated that HERRERA left the backpack inside CI-2's vehicle just before being arrested. The backpack was sealed and entered into SWDTF evidence pending a search warrant.

16. HERRERA was searched prior to being transported and booked into La Plata County Jail. Officers located a small baggie with a white crystal-like substance, an unknown amount of cash, and a black Samsung cell phone (the Device) on HERRERA's person. At the time of his arrest, HERRERA did not have any other cell phones in his possession. Officers provided HERRERA's belongings, to include the Device, to the La Plata County Jail during the booking process.

17. On May 28, 2024, SWDTF seized the Device from HERRERA's property at La Plata County Jail. SWDTF examined the Device and determined the IMEI number is 3575329036033. SWDTF placed the Device into evidence at SWDTF in Durango, Colorado, pending a search warrant. On June 12, 2024, custody of the Device was transferred from SWDTF to FBI and transported to the Farmington FBI office, pending a search warrant.

18. While HERRERA was detained at the La Plata County Jail, he made several telephone calls on a recorded line. Officers with the SWDTF and RTTF listened to recordings of some of the calls made by HERRERA. In one call placed on May 26, 2024, HERRERA told his wife to pick up his cellular telephone (the Device) from the jail, get the money off it, and destroy the cellular phone.

19. On a call placed on May 28, 2024, HERRERA's wife stated that she had bad news for HERRERA. She told him that his cellular telephone (the Device) was not in his property. HERRERA asked, "that isn't good huh?" His wife replied, "Probably not." HERRERA exclaimed "Fuck!"

20. On June 12, 2024, a search warrant (24-sw-853 JMC) was executed on the black Adidas backpack seized on May 21, 2024. A loaded, Hi Point 9mm handgun with serial number P1601339 was located inside the backpack. Drug paraphernalia, dozens of individually packaged Suboxone[1], black face mask and gloves were also located inside the

---

[1] Suboxone is a schedule III regulated drug utilized to treat opioid addictions.

backpack. The Hi point firearm and ammunition was entered into FBI evidence pending laboratory analysis.

21. On July 12, 2024, the service provider for phone number 505-534-1666 responded to a grand jury subpoena for account information relating to the phone number. The account is registered to a previously unknown male (initials C.P.) from Utah. However, the phone number is associated with a Samsung cell phone with IMEI number 357532329036033 (the Device). Based on HERRERA's use and physical possession of the Device on May 21, 2024, agents believe C.P. is not the true owner of the Device.

22. Based on information provided within this affidavit from law enforcement officers and reliable CI statements, your affiant believes that evidence of a crime can be found by conducting a search of the Device related to violation, 18 U.S.C. § 922(g), felon in possession of a firearm or ammunition.

## **TECHNICAL TERMS**

23. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless Device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of

7

    capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the Device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage Device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable

8

storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation Device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation Devices can give a user driving or walking directions to another location. These Devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

24. Based on my training, experience, use, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, and portable media player. In my training and experience, examining data stored on Devices of this

type can uncover, among other things, evidence that reveals or suggests who possessed or used a particular Device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25. Based on my knowledge, training, and experience, I know that electronic Devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the Device.  This information can sometimes be recovered with forensics tools.

26. Forensic evidence: As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a Device can also indicate who has used or controlled the Device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  User attribution evidence is crucial to an investigation to connect any evidence to a specific person.

    c.  A person with appropriate familiarity with how an electronic Device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic Devices were used, the purpose of their use, who used them, and when.

    d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.  Further, in finding evidence of how a Device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

27.  Nature of examination:  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

28.  Manner of execution:  Because this warrant seeks only permission to examine a Device already in law enforcement's possession, the execution of this warrant does not

involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

29. I submit that this affidavit supports probable cause to believe that the Device contains evidence of offense, 18 U.S.C. § 922(g), felon in possession of a firearm or ammunition. As such, I hereby request a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

30. Based on the facts set forth in this affidavit, there is probable cause to believe HERRERA violated federal criminal statute, of 18 U.S.C. § 922(g), felon in possession of a firearm or ammunition., Therefore, I submit that this affidavit supports probable cause for a warrant to search the Device described in Attachment A and seize the items described in Attachment B. Evidence sought in Attachment B may serve to inculpate or exculpate HERRERA and are critical to the unfolding investigation.

31. Assistant United States Attorney, Joseph M. Spindle has approved this application.

32. I swear that this information is true and correct to the best of my knowledge and belief.

_____
Lorraine Hardy, Special Agent
Federal Bureau of Investigation

Electronically SUBSCRIBED and telephonically SWORN
to me this _17____ day of July, 2024.

_____
Karen B. Molzen
UNITED STATES MAGISTRATE JUDGE

12

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The property to be searched is described as follows:

1. Black Samsung cellular telephone identified as a black Samsung cellular telephone with IMEI number 357532329036033 and cellular telephone number 505-534-1666 ("the Device"), which is currently in the secure custody of the Federal Bureau of Investigations in Farmington, New Mexico.

2. This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

PROPERTY TO BE SEIZED

1) All records on the Device relating to felon in possession of a firearm described in Attachment A:

    a. lists of contacts and related identifying information;

    b. any information pertaining to HERRERA's, associates, or activities, involved in said incident, including names, addresses, phone numbers, text messages, photographs, or any other identifying information;

    c. any information pertaining to the location of the device in relation to the incidents described above; and

    d. cellular telephone account information, credit card payment information, financial records pertaining to the account and any other details pertaining to the account(s) established within the Device.

2) Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

**Information to be Seized by the Government**

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency

14

personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the provider in order to locate the things particularly described in this warrant.